In the Matter of WILLIAM REEVES, an Insane Person.

*Supreme Court, on appeal, June T., 1915.*

The Court of Chancery vested by Const. *Art. IV*, §10, and *Rev. Code* 1852, amended to 1893, *p.* 704, *c.* 95, §1, with the general jurisdiction and powers according to the course of Chancery practice in England, by *Rev. Code* 1852, amended to 1893, *p.* 381, c. 49, vested with the care of insane persons above the age of twenty-one, and authorized to inquire into and determine a person's sanity, and if found to be insane to appoint a trustee to take charge of him and manage his estate, and "in the name of the insane person" do whatever is necessary for the care and preservation of his estate to direct the trustee to sell any realty, the estate of an insane person for whom a trustee has been appointed is a trust fund for his maintenance and support, which, without restriction to any particular kind of estate, may. be sold by order of the Court of Chancery when it appears to be for the lunatic's interest.

Both under the common law and *Rev. Code* 1852, amended to 1893, *pp.* 630, 631, *c.* 83, §§26, 27, "a person having a legal or equitable estate or right, in fee tail, in possession, remainder, or reversion, in any lands, tenements or hereditaments," has an actual vested estate attended with the usual incidents of full freedom, including the power at his own will, to convert it into an absolute estate.

Under *Rev. Code* 1852, amended to 1893, *p.* 631, *c.* 83, §27, providing that a person having a fee tail may convert it into an absolute estate, the right to bar an estate tail is not property, but is an incident of the estate which he may or may not assert.

A devise of real and personal property to one and the lawful heirs of his body forever, but if he died leaving no lawful issue of his body, then over to another created an "estate tail" in the first devisee.

*Rev. Code* 1852, amended to 1893, *p.* 631, *c.* 83, §27, provides that one having an estate in fee tail in possession, remainder, or reversion may by conveyance, convert it into an absolute estate. *Rev. Code* 1852, amended to 1893, *p.* 381, *c.* 49, §4, authorizing the sale of the real estate of an insane person, provides that if the return of the sale is confirmed, the trustee shall make a deed to the purchaser conveying as full a title to the lands as the insane person had at the time of sale, the trustee of an insane tenant in tail, selling his ward's realty under the direction of the Court of Chancery could, by deed duly acknowledged, convey in fee simple the real estate of the insane tenant in tail in the same manner and as effectually as if it were held in fee simple.

APPEAL FROM COURT OF CHANCERY. Petition by Frank
F. Davis, trustee, for the sale of lands of William Reeves,
insane, tenant in tail, Stephen Taylor, contingent remainder-
man, respondent. From an order of the Court of Chancery,
*ante p.* 324, (92 *Atl.* 246), directing the trustee to sell and convey
the realty in fee simple, the respondent appeals.

Argued before PENNEWILL, C. J., and BOYCE, RICE and
HEISEL, J. J.

*Henry Ridgely* and *W. Watson Harrington*, for the appellant.
*David J. Reinhardt* and *Daniel J. Layton, Jr.*, for the
appellee.

BOYCE, J. (delivering the opinion of the court). Edward
Taylor, late of Laurel, Sussex County, who died on the thirtieth
day of March, A. D. 1897, did, in his lifetime, make and pub-
lish his last will and testament, since his decease duly admitted
to probate before the Register of Wills, in and for said County,
in and by which he divised, *inter alia*, as follows:

"I give and devise to my wife, Martha Taylor, all the residue of my
property, real, personal or mixed, to be held by her for and during the
period of her natural life or widowhood, and for her to properly educate
and clothe the boy, William Reeves, that I now have with me, and at the
death or marriage of my said wife Martha, whichever first occurs, then it
is my will that the whole of my said property go to my boy William Reeves,
if he then be living, to him and the lawful heirs of his body forever, but
in the event of him, the said William Reeves, dying and leaving no lawful
issue of his body, then for the whole of said property to go to my nephew,
Stephen Taylor, his heirs and assigns forever, or in the event of the said
William Reeves dying before the death or marriage of my said wife,
Martha, then and in that case I desire that the said property upon her
death or marriage pass immediately to my said nephew, Stephen Taylor,
to him and his heirs and assigns forever."

Martha Taylor, the life tenant, therein named, has since
departed this life, and the said William Reeves is seised of the
real estate of the testator under the provision of said will.

The said William Reeves was, on the thirtieth day of Sep-
tember, A. D. 1898, ascertained to be insane by inquisition

duly held. On the eleventh day of August, A. D. 1902, he was duly admitted to the Delaware State Hospital at Farnhurst for the insane, and there has since been confined—being at the time of his admission, and now is, insane. Upwards of two thousand dollars are due the said hospital for his board and maintenance, care and custody.

Frank F. Davis, the present duly appointed trustee of the said William Reeves, did, on the tenth day of June, A. D. 1914, present to the Chancellor, in Sussex County, a petition, praying for an order authorizing and directing the sale of the real estate, in the petition mentioned, of his insane ward, freed, barred and discharged of and from all estates tail, remainders and reversions, and for a rule upon Stephen Taylor, the contingent remainderman in said will, to show cause why said lands should not be sold in fee simple, the estate tail extinguished, and the remainder legally barred.

The rule issued, and coming on to be heard on petition and answer, the Chancellor held that William Reeves, the insane, holds as tenant in tail the said real estate, and that the court has power and authority to direct the trustee to sell, alien and convey, in fee simple the said real estate, in the same manner and as effectually as if the said real estate were held in fee simple; and further held that because of the character and condition of the real estate, it is proper that the same should be sold, and thereby the estate be cared for, preserved and increased; and decreed that the trustee do sell at public auction, etc., all the lands in the petition mentioned, as an estate in fee simple.

Stephen Taylor, by his solicitors, prayed for an appeal from the decree, which was allowed, and is now before this court.

The solicitors for the appellant assign that the court erred (1) in decreeing that the said William Reeves holds as tenant in fee tail the said real estate in said petition mentioned; (2) in decreeing that the said court has jurisdiction, power and authority to direct the said trustee to sell, alien and convey in fee simple, the said real estate in the same manner and as effectually as if the said real estate were held in fee simple; and

(3) in decreeing that the said Frank F. Davis, trustee for the said William Reeves, do sell at public auction the said real estate as an estate in fee simple.

Before considering the several assignments of error, it may be said that the general jurisdiction and powers of the Court of Chancery are vested by *Section* 10, *Article IV*, of the Constitution (1897), and *Section* 1, *Chapter* 95, *Revised Code*, (1893) 704. Except in so far as affected by subsequent statutory provisions, the Court of Chancery is by the above statute vested with jurisdiction and powers according to the course of Chancery practice in England. Anciently the powers of the Chancellor, or the High Court of Chancery, with respect to lunatics, were not included within the general, inherent, original jurisdiction of the court, but were derived from the Crown by delegation to the Chancellor as the personal representative of the King by means of his sign manual. 3 *Pomeroy's Equity Jurisprudence*, § 1311; *Story's Equity Jurisprudence*, § 1335; *Penington v. Thompson*, 5 *Del. Ch.* 328, 368; *In re Harris*, 7 *Del. Ch.* 42, 49, 28 *Atl.* 329. *Chapter* 49, *Revised Code* (1893) 381, confers upon the Court of Chancery in this State, the care of insane persons above the age of twenty-one years. By this statute the Chancellor may issue a writ to inquire by jury and determine whether the person named is insane, and if found to be insane, appoint a trustee for such person to take charge of him and manage his estate; and—

"*in the name of the insane person* do whatever is necessary for the care, preservation and increase of his estate." And "if it appear to the Chancellor proper to sell any real estate of the insane person, he may direct such sale to be made by the trustee. * * *"

The authority of the Chancellor to direct a sale of the lunatic's property by the trustee is, therefore, derived from the statute.

"A person having a legal or equitable estate, or right, in fee tail, in possession, remainder, or reversion, in any lands, tenements or hereditaments," has an actual vested estate attended with the usual incidents of full freedom, including the power at his own will, to convert it into an absolute estate,

both by the common law and by the statute. *Sections* 26 and 27, *c.* 83, *Revised Code* 1893, 630, 631; *Holland v. Cruft, Adm'r., et al.*, 3 *Gray (Mass.)* 162, 182.

Although a person has been adjudged insane and a trustee has been appointed for him, the title to his property remains in him. The trustee is a substitute for the insane person to do, in the name of the latter, under the direction and with the approval of the Chancellor, "whatever is necessary for the care, preservation and increase of his estate." The estate of an insane person is a trust fund for his maintenance and support and may be sold when it shall appear to be for his interests, without regard to contingent interests of others. The governing principle in the management of the estate, applicable generally, is the lunatic's interest, not that of those who may have eventual rights of succession. *In re Salisbury*, 3 *Johns. Ch.* 347.

The remainder after an estate tail is subject to be extinguished as provided by the statute for barring estates tail.

The statute clothing the Court of Chancery with power to direct the trustee of an insane person to sell his real estate, does not restrict the power of sale to any particular kind of estate.

The right to bar an estate tail is not property, it is an incident of the estate—a privilege bestowed by the statute upon a tenant in tail, which he, being sane, may or may not assert. What a tenant in tail, having power by the statute to bar an estate tail, might or might not do, he being sane, is both speculative and unimportant in a case like this.

With these general observations, we will now consider the assignments of error. As to the first, the correctness of the conclusion reached by the Chancellor that William Reeves took an estate tail under the will of Edward Taylor was not questioned, but the argument of the solicitors for the appellant was made on the assumption that William Reeves was and is tenant in tail in possession of the real estate mentioned in the petition. The Chancellor very properly held that William Reeves is seised of an estate tail in the lands which he took under the said will.

The single question presented by the two remaining assignments of error is whether the trustee of the insane tenant in tail, in selling his ward's real estate under the direction of the Chancellor, can by deed duly acknowledged, convey in fee simple the estate of the insane tenant in tail in the same manner and as effectually as if the real estate were held by the insane person in fee simple. The statute for barring estates tail, provides that.

"A person having the legal or equitable estate, or right, in fee tail, in possession, remainder, or reversion, in any lands, tenements or hereditaments, shall have power to alien said lands, tenements or hereditaments, in fee simple."

While the statute confers upon the tenant in tail a "power" to bar the entail, yet we do not think that the doctrine of "equitable powers" is applicable to the question now before the court. Indeed it seems to us that the equitable principle of election is equally inapplicable. The answer to the question before us must be found in the reasonable construction of the statute which authorizes the Chancellor to order the sale of the real estate of an adjudged lunatic, considered in connection with the statute for barring estates tail and the policy of the law to promote and preserve freedom of alienation of real estate.

The statute authorizing the sale of real estate of an insane person provides that:

"If the return of such sale be confirmed the trustee shall make a deed to the purchaser which shall convey *as full a title to the lands as the insane person had at the time of sale.*"

It is urged that the deed of the trustee will not, and cannot, convey all the estate which the insane person could convey if sane, but only an estate for his life.

In view of the general character of an estate tail, it seems to us that a reasonable construction of the words "as full a title to the lands as the insane person had at the time of the sale" means as full a title to the lands as a tenant in tail could or would convey, if making a deed in fee simple himself.

Opinion.

If the tenant in tail is insane and it becomes necessary to sell his real estate for his proper maintenance and support, as it is in this case, and his trustee does under an order of the Chancellor sell the estate as in fee simple and makes a deed therefor, duly acknowledged or proved, according to law, is not such a deed effective within legislative intendment to bar the estate tail?

Is not such a conveyance, made on behalf of and for the benefit of the insane tenant in tail, the assertion of his right to bar the entail within the meaning and purpose of the Acts of Assembly in his behalf? We think so.

And after a very careful consideration of this case, we are constrained to hold that when the trustee shall make the sale ordered by the Chancellor in this case it will be in legal effect a sale made by the insane tenant in tail in fee simple, and if followed by the deed of his trustee, duly acknowledged or proved according to law, it will extinguish the estate tail in the real estate sold, the same as if the deed in fee simple had been made by the tenant in tail, and it will pass the premises sold to the purchaser or purchasers in fee simple, "in the same manner and as effectually as if such estate, or right, were in fee simple." Incidentally, it may be said, as was contended by counsel for the appellee, that a sale of the said real estate in execution of a judgment recovered against the insane tenant in tail by the State Board of Trustees of the Delaware State Hospital at Farnhurst, for his board and maintenance, care and custody, would unquestionably bar the entail. *Chapter* 553, §7, *Vol.* 18, *Laws of Delaware*, 385 (*Revised Code* 1893, 386); *Chapter* 111, §§26 and 27 (*Revised Code* 1893, 836).

The decree of the Chancellor ordering the sale of the lands and tenements of William Reeves, mentioned in said petition, as in fee simple, is confirmed.