EQUITABLE TRUST COMPANY, a corporation of the State of
Delaware, Trustee,

*vs.*

UNION NATIONAL BANK, a corporation of the United States
of America, and DAVID M. HILLEGAS, JR., Trustees, et
al.

*New Castle, Feb. 14, 1941.*

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for complainant Equitable Trust Co., trustee.

*Ennalls Berl,* of the firm of Southerland, Berl, Potter & Leahy, for defendants Union National Bank and David M. Hillegas, Jr.

THE CHANCELLOR: This is a bill for instructions, filed by the Equitable Trust Company, the grantee in two several deeds of trust. A, who has now been found to be a lunatic by certain proceedings taken pursuant to the order of this court, is the ultimate taker of the corpus of both funds, clear of any trust provisions, whatsoever. The income arising therefrom is, however, payable to certain other named persons during their lives, or the life of the survivor. At the time of the creation of these trusts, the corpus consisted of certain invested securities which were assigned and granted to the trustee on the terms provided for in the deeds.

The deed of June 10th, 1932, by which A created one of these trusts, provides that during his lifetime no "investments" shall be sold or the proceeds thereof reinvested "unless such sales or investments are approved" by him, but after his death "the discretion of the trustee shall be absolute." A provision is, also, inserted that in case of sales made and funds reinvested, the trustee shall not be restricted to securities of the character authorized by the laws of the State of Delaware for the investment of trust funds.

The ·trust deed of October 1st, 1928, was executed by X, who was the life beneficiary of the fund created thereby, unless his wife should survive him. He, also, was the sole life beneficiary of the fund created by the deed of June 10th, 1932. The deed of October 1st, 1928, also, provides that "upon the written direction" of A, the ultimate taker of the corpus of the fund, the trustee shall "call in, sell and dispose of" any investments, and, also, upon the "written direction" of A shall "reinvest the principal."

The Union National Bank and David M. Hillegas, Jr., two of the defendants in the action, are the trustees appointed by this court in the lunacy proceedings, and the precise question to be determined is whether, as such trustees, they can exercise the rights and powers given to and reserved by A under the several trust deeds, and which he is now incapable of exercising. 49 *C. J.* 1279. It seems to be conceded that A's right of administrative control is a mere power, and nothing more (see *Scott on Trusts,* §§ 185, 227.14; 3 *Bogert on Trusts,* § 681) ; and, under the issue raised by the pleadings it is unnecessary to consider whether, or not, he occupies a fiduciary position toward the life beneficiaries of the income. See *Scott on Trusts,* § 185; 3 *Bogert on Trusts,* § 681. Professor Scott, also, aptly points out that "Where the person, whose directions the trustee is authorized to follow, becomes insane, and a guardian is appointed, it has been held that the trustee is not under a duty to comply with the directions of the guardian." *Scott on Trusts,* § 185, *p.* 980. *Matter of City Bank Farmers Trust Co., N. Y. L. J. Nov.* 28, 1934, *p.* 2065 is cited in support of this proposition, but I do not have access to that case. However, the rule announced in *Scott on Trusts* seems to substantially follow the early English rule prior to the enactment of any statutory provisions in that country. In this connection, Mr. Shelford points out that when a bare authority, to be exercised for the benefit of other persons, is given to a lunatic, it cannot be exercised by his trustee. *Shelford on Lunacy,* (2 *Law Libr.*) *p.* 121. Moreover, in-

dependent of statute, it seems that the same rule ordinarily applied in England to a power coupled with an interest, which devolved upon an idiot or a lunatic. *Shelford on Lunacy,* (2 *Law Libr.*) *\*p.* 120. Prior to the enactment of any statutory provisions in that country, the governing rule may be summarized in the following language of Mr. Shelford:

"If a power, coupled with an interest, or a mere naked authority devolves upon idiots or lunatics, it is in most cases suspended during the continuance of such disability; and, therefore, the committees of lunatics cannot exercise powers given to lunatics \* \* \*." *Shelford on Lunacy* (2 *Law Libr.*) *\*p.* 120.

In *Ex parte Smyth,* 2 *Swans.* 393, 36 *English Reprint,* 667, an Act of Parliament authorized the vicar of a certain church to grant leases of the glebe lands, with the consent of the patron in writing. He was a lunatic and his committee, purporting to act for him, approved a lease made by the vicar, but Lord Eldon refused to sanction the action taken by the committee because the legislative act did not expressly authorize it.

A has an interest in the preservation of the corpus of both trust funds, but the principle stated by Mr. Shelford governs the determination of this case, and the power given A cannot be exercised by the trustees appointed in the lunacy proceedings.

This court has the express statutory authority to appoint trustees for insane persons. *Sect.* 3091, *Rev. Code* 1935. It is true that *Section* 3093 of the *Code* provides:

"A trustee may, in the name of the insane person, do whatever is necessary for the care, preservation and increase of his estate."

But, at common law, the recognized rights of the trustee for a lunatic or an insane person were of somewhat the same general nature. *Phillips on Lunatics,* 303, 304, 314, 318. Perhaps I should, also, add that at that time the trustee did not have title to the property of the incompetent persons (*Phillips on Lunatics,* 303), and does not have title

under our statute. *In re Reeves,* 10 *Del. Ch.* 483, 94 *A.* 511; see, also, 25 *Amer. Juris.* 69. In England, it seems that the acts of the trustee in the administration of the property and estate of a lunatic or insane person were under the jurisdiction and control of the Lord Chancellor, though perhaps not as a part of the inherent jurisdiction of the court of equity. *In re Reeves,* 10 *Del. Ch.* 483, 94 *A.* 511; *In re Harris,* 7 *Del. Ch.* 42, 28 *A.* 329; 7 *Harv. Law Rev.,* 496. Acts of the same general nature are under the supervision of the Court of Chancery in this state. See *In re Reeves,* 10 *Del. Ch.* 483, 94 *A.* 511.

Differing from a trust, the exercise of a mere power depends wholly on the will of the donee, and is in no sense imperative. 3 *Sugd. on Powers,* (16 *Law Libr.*) 173; *Ex parte Gilchrist, L. R.* [1886] 17 *Q. B. D.* 521. In other words, as was aptly said in *Ex parte Gilchrist, supra,* a power "is an individual personal capacity of the donee * * * to do something," and in most cases is nothing more. The unexecuted right to exercise a power is, therefore, in no sense an estate or a property right vested in the donee. *Ex parte Gilchrist, L. R.* [1886] 17 *Q. B. D.* 521; *Highfield v. Del. Trust Co.,* 4 *W. W. Harr.* (34 *Del.*) 290, 152 *A.* 117; *Id.,* 4 *W. W. Harr.* (34 *Del.*) 306, 152 *A.* 124; 2 *Bouv. Law Dict.,* (*Rawle's 3rd Rev.*) *Power, p.* 2646; 49 *C. J.* 1248.

In England, the rights of the trustee of a lunatic in cases of this general character are now regulated by statute. 16 & 17 *Vict;* see *Phillips on Lunatics,* 317. But, independent of statute, when the real individual and discretionary nature of the rights of the donee of a power are considered, the rule applied before the enactment of any statutory provisions seems entirely logical. Moreover, I see nothing in our statute to indicate an intent to change that rule. See *Ex parte Smyth, supra.* In view of the similar nature of the administrative rights and powers of the trustee at common law, the authority given the trustee to "do whatever is necessary for the care, preservation and increase of his (the insane person's) estate" does not have that effect.

*Spruance v. Darlington,* 7 *Del. Ch.* 111, 30 *A.* 663, involved the doctrine of election by the court, but that rule does not apply here. See *In re Reeves,* 10 *Del. Ch.* 483, 94 *A.* 511. The latter case affirmed the decree entered by the court below (10 *Del. Ch.* 324, 92 *A.* 246), but refused to apply the doctrine of election, though applied by the Chancellor, or to hold that the trustee could exercise a statutory right or power, as such, which the lunatic had. In the *Reeves case,* the Supreme Court may have construed, with some liberality, *Sections* 3093 and 3094 of the *Revised Code of* 1935, when read together, but this case presents a very different state of facts. The question in that case was whether this court could order the trustee of a lunatic to sell and convey an estate in fee simple when the owner merely had an estate in fee tail. By statute, however, the owner, if mentally competent, could have barred the entail by the execution and delivery of a fee simple deed. *Section* 3698, *Rev. Code* 1935. The court treated this as an incident to the property rights of the lunatic, and held that, under the statutes, an estate in fee simple could be conveyed. *Boyd v. Cloud,* 5 *Pennewill* 479, 62 *A.* 294, is equally inapplicable.

A decree will be entered in accordance with this opinion.